**BROWN, Estate of, In re.**

Probate Court, Fayette County.

No. 6021.   Decided February 15, 1954.

292

Winston W. Hill, Washington C. H., for exceptor.
Reed M. Winegardner, Otis B. Core, Washington C. H., for administrator.

## OPINION

By CASE, J.

On November 13, 1953, Harry Warfield, as administrator of the estate of Howard L. Brown, deceased, filed his first and final account purporting to be in compliance with the provisions of §2109.30 R. C. (former §10506-34 GC) and, on December 19, 1953, Goldie Brown, surviving spouse of said decedent, filed certain itemized exceptions thereto; and notice thereof was duly served upon all interested parties.

On December 31, 1953, said exceptor filed an affidavit of disqualification against Judge Rell G. Allen, the duly elected qualified and acting judge of the Probate Court of Fayette County, Ohio; and, on January 5, 1954, a journal entry, approved by attorneys of record, was duly made and entered certifying hearing, on said exceptions to the aforesaid account, to the judge of the common pleas court of said county as acting judge in said proceeding in accordance with the provisions of §2101.37 R. C.

On February 4th, 5th and 8th, 1954, said matter came on to be heard and was heard before said common pleas judge as acting judge of said probate court; and, at the beginning of said hearing on February 4, 1954, an agreed entry was duly submitted and made withdrawing the aforesaid affidavit of disqualification against Judge Rell G. Allen for the purpose of giving full force and effect to the aforesaid entry of January 5, 1954.

### DISCUSSION OF EXCEPTIONS, TESTIMONY AND EXHIBITS

The First Item of said exceptions reads as follows:

"1. The first and final account does not show the complete list of purchases by the Kasle Steel Company of Middletown, Ohio."

According to the administrator's account, as filed with the Probate Court of Fayette County, the purchases from said estate by the Kasle Steel Company were listed in seventeen separate items which totaled $3,981.07.

According to the Administrator's Exhibit "E," admitted into

evidence by agreement of the parties, Kasle Steel Company made ninety (90) separate purchases and payments therefor after the death of said decedent in the total amount of $9,952.58.

Said Administrator's Exhibit "E" shows that seventeen of said purchases were paid for by checks amounting to $3,981.07, and that seventy-three of said purchases were paid for by cash amount to $5,971.51.

It therefore appears that said seventy-three transactions are not included in the itemized statement of receipts during the accounting period as required by the provisions of §2109.30 R. C. (formerly §10506-34 GC); and that Item 1 of said exceptions is well made and should be sustained.

The Second Item of said exceptions reads as follows:

"2. The first and final account does not show a complete list of the purchases made by the Cohen Brothers."

According to said administrator's account, as filed with the Probate Court of Fayette County, the purchases from said estate by Cohen Brothers, Inc., Middletown, Ohio, were listed in twenty (20) separate items which totaled $14,356.89.

According to the Administrator's Exhibit "4," admitted into evidence by agreement of the parties, Cohen Brothers, Inc., made twenty (20) separate purchases and payments therefor after the death of said decedent in the total amount of $14,356.89.

No evidence was introduced of record in this proceeding to indicate or show that there were any other transactions with Cohen Brothers, Inc., during the accounting period.

It therefore appears that said twenty (20) transactions were all of the sales to and purchases made by Cohen Brothers, Inc., and that same were included in the itemized statement of receipts during the accounting period, as required by the provisions of §2109.30 R. C. (formerly §10506-34 GC); and that Item 2 of said exceptions is not well made and should be overruled.

The Third Item of said exceptions reads as follows:

"3. The first and final account does not list any purchases of metal made by Henry Frydman of Dayton, Ohio."

According to the Administrator's account, as filed with the Probate Court of Fayette County, no purchases were listed thereon indicating sales made to or monies received from Henry Frydman of Dayton, Ohio.

According to Administrator's Exhibit "5," admitted into evidence by agreement of the parties, Henry Frydman made five (5) separate purchases and payments therefor after the death of said decedent in the total amount of $772.30.

It therefore appears that said five transactions are not in-

cluded in the itemized statement of receipts during the accounting period as required by the provisions of §2109.30 R. C. (formerly §10506-34 GC); and that Item 3 of said exceptions is well made and should be sustained.

The Fourth Item of said exceptions reads as follows:

"4. Prior to the appointment of the administrator, the widow received a letter from Reed M. Winegardner, with whom she had never done business before, a true copy of said letter being as follows:

" 'Mrs. Howard L. Brown

914 East Market St.

Washington C. H., Ohio

" 'Dear Mrs. Brown:

'I was greatly shocked to learn of the death of your husband, Howard L. Brown, as of Wednesday evening, January 14, 1953. 'Howard had been consulting with me on numerous matters' during the past few weeks and only about a week ago had talked to me about the making of his will. I am not sure whether he was ever able to get one made or not, but he told me that he would be up and see me in a few days as he needed one.

'I greatly regret his passing, because I thought Howard was a very fine person, and I enjoyed working with him. With deepest regret and sympathy, I am

"Very truly years,

'/s/ Reed M. Winegardner'

"and in pursuance to said letter, the exceptor and her daughter, Helen Warfield, and son-in-law Harry Warfield, the administrator, went to the office of Reed M. Winegardner, the exceptor having it in mind that she would be the administrator of the estate. A discussion was had because of the defective hearing of the exceptor, her daughter and her son-in-law stated that instead of having an outsider to act as administrator that Harry Warfield would take the job and would not charge an administrator's fee. Upon the basis of the foregoing offer and acceptance by the exceptor, Harry Warfield was appointed administrator of the estate of Howard L. Brown with the distinct understanding that he was to charge no fee whatsoever for his services.' "

During the hearing thereon, said Exceptor attempted to introduce evidence to show that said Administrator had orally agreed to forego administrator's fees and commissions as alleged in said item of exceptions and therefore, under the theory of equitable estoppel, was not entitled to claim any fees and commissions as provided under §2113.35 R. C. (formerly §10509-192 GC).

Objection was duly made to the admission of such evidence

and the Court sustained said objection, and in making said ruling stated in substance as follows:—

While it is well within the realm of possibility that evidence might be adduced to support and sustain said Exceptor's representation that such agreement was made and entered into by and between all of said parties, the effect of such an agreement cannot be binding upon the Court unless it appears that such a contract is authorized by the statutory or case law of this state.

The Supreme Court of Ohio in **Union Savings Bank & Trust Co. v. W. U. Telegraph Co., 79 Oh St 89,** said at **page 99:**

"The Probate Court is a court of record and its jurisdiction in matters testamentary and in the appointment of administrators and guardians has been broadly given by the Constitution of this state. **Article IV, Sections 7 and 8.** The jurisdiction is plenary and it may well be doubted whether the legislature, if it chose to do so, could in any respect limit it."

If, by the representations and allegations contained in Item 4 of her exceptions herein, the Exceptor is seeking to invoke the principle of equitable estoppel upon the theory that the within proceeding is a chancery case, the Court of Appeals for Fayette County has clearly determined that probate matters have lost their chancery character in Ohio. In the case of **In re Trust of Marshall, 78 Oh Ap 45,** at **pages 45 and 46,** the Court of Appeals for Franklin County (which is also the court of appeals for Fayette County) stated in part as follows:

"This appeal on questions of law and fact can stand as such only if the motion for a dismissal of the trustee is a chancery case within the meaning of that term as used in **Section 6, Article IV of the Constitution of Ohio.** It may be conceded that under the common law the administering of trusts and the appointment of guardians were chancery cases. However, in the case of **In re Estate of Gurnea, 111 Oh St 715,** 146 N. E. 308, the court held that probate matters have lost their chancery character in Ohio, and that such proceedings are not now chancery cases as that term is used in the Constitution. That decision was followed in **Squire, Supt. of Banks, v. Bates, 132 Oh St 161,** 5 N. E. (2d), 690; **In re Guardianship of Moyer, 68 Ohio Ap 319,** 40 N. E. (2d), 695; and **In re Estate of Bates, 142 Oh St 622,** 53 N. E. (2d), 787. In the last cited case, the court said:

" 'The question before the Probate Court in this case related to exceptions to the inventory and appraisement filed by an executor. It is not a chancery case. If there had previously been any basis for controversy relative thereto, it was definitely determined by the decision of this court in the case of **Squire, Supt. of Banks, v. Bates, 132 Oh St, 161,** 5 N. E. (2d),

690, where it is held in the first proposition of the syllabus as follows:

' " "The settlement of the account of a testamentary trustee in the Probate Court is not a chancery case and hence not appealable as such from the Probate Court to the Court of Appeals.' " '

It is to be noted that the opening provisions of §2113.35 R. C. (formerly §10509-192 GC), clearly impose a mandatory duty upon the Probate Court with respect to considering and allowing commissions to executors and administrators, for the language therein used states in part as follows:

"Executors and administrators shall be allowed commissions * * *" etc.

and that the denial of such commissions are to be based solely upon specific conditions and exceptions pertaining to any compensation provided by the terms of a will, or upon a finding by the Court that an administrator or executor has in any respect not faithfully discharged his duties as such.

Again, it is to be noted that the Court of Appeals for Franklin County (which is also the Court of Appeals of Fayette County) has, as recently as February 16, 1946, held that unfaithfulness by a fiduciary of a decedent's estate in the discharge of his duties is the **sole basis** on which a court can reduce or refuse to allow his compensation fixed by §10509-192 GC. (**In re Estate of Marshall; Von Schmide v. Marshall, 78 Oh Ap 457.**)

Neither does it appear that the Probate Court was informed, at the time the within administrator was appointed, of any such agreement whereby Harry Warfield was to forego such administrator's commission provided by law, nor that, if so informed of said agreement, the Probate Court could have incorporated such agreement as one of the conditions to be imposed upon and met by such administrator in performing such services on behalf of decedent's estate. Indeed, in the light of the first headnote in the case of **In re Estate of Marshall: Von Schmidt v. Marshall, 78 Oh Ap 457**, which reads as follows:

"1. Unfaithfulness by an executor of a decedent's estate in the discharge of his duties is the sole basis on which a court can reduce or refuse to allow his compensation fixed by §10509-192 GC."

it would appear that there is no other basis on which a Probate Court can reduce or refuse to allow such compensation.

As hereinbefore stated, that determination was made by the Court of Appeals for Fayette County and must be followed by this Court since it has not been modified or reversed and is therefore controlling in the matter now pending before this Court.

Therefore, since this Court is, for the purposes of this proceeding, the Acting Probate Court of Fayette County as provided by law, it appears to be without jurisdiction to grant any equitable relief arising out of equitable estoppel based upon proof of any such contract or agreement to forego such compensation; and it is equally clear that the Court of Appeals for this county has declared and established that the only basis for authorizing a reduction or denial of such compensation is that specified by statute.

Therefore, it appears that Item 4 of said exceptions should be overruled.

The Fifth Item of said exceptions (as amended at the hearing) reads as follows:

"5. By agreement of counsel for the exceptor and the attorney for the administrator, Harry Warfield, the administrator, was permitted to draw as wages the sum of $75.00 per week for a period of 60 days only; that at the expiration of the 60 days without consulting exceptor or her counsel or without being granted a court order the administrator paid himself the sum of $75.00 per week for a period of 11 additional weeks, in the sum of $825.00, which is an illegal payment."

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator disbursed and paid to himself for shop supervision and labor 18 separate payments consisting of 9 payments of $75.00 each and 9 payments of $69.18 each and amounting to a total of $1,297.62 as wages for his services as shop supervisor and laborer during the accounting period.

According to Exceptor's Exhibit "C," which reads as follows:

"February 25, 1953

"Mr. Reed M. Winegardner
Attorney at Law
Washington C. H., Ohio
          "Re: Howard Brown Estate
"Dear Reed:

"Since Harry Warfield is devoting full time disposing of the personal assets of Howard Brown, I, as attorney for Mrs. Brown, authorize him to draw the sum of $75.00 per week for a period of 60 days. At the end of this time we can review the disposition of the assets and determine our future course of action.

"Very truly yours,
"HILL and HILL
"By:
s/ "WWHILL
"Winston W. Hill"

all parties had agreed that said Harry Warfield should receive $75.00 per week for such services for a period of at least 60 days. Said Exhibit "C" was admitted into evidence by agreement of the parties; and the administrator's account shows that such payments began on March 2, 1953.

It is noted that said Item 5 of the exceptions is directed to lack of express authority for such payments after the expiration of the aforesaid 60 day period.

From all of the evidence adduced, it appears that Harry Warfield was a new and additional employee whose employment the interested parties obviously determined would be advantageous to the estate to continue decedent's business for a limited period in order to obtain the greatest amount in liquidating the business.

Counsel for said Administrator contends that the provisions of §2113.30 R. C. (former §10509-9 GC), are not applicable to such employment and other related expenses incurred in liquidating said decedent's estate. Said §2113.30 R. C., reads as follows:

"Except as otherwise directed by the decedent in his last will and testament, an executor or administrator may, without personal liability for losses incurred, continue the decedent's business during one month next following the date of the appointment of such executor or administrator, unless the probate court directs otherwise, and for such further time as the court may authorize on hearing and after notice to the surviving spouse and distributees. In either case no debts incurred or contracts entered into shall involve the estate beyond the assets used in such business immediately prior to the death of the decedent without the approval of the court first obtained. During the time the business is continued, the executor administrator shall file monthly reports in the court, setting forth the receipts and expenses of the business for the preceding month and such other pertinent information as the court may require. The executor or administrator may not bind the estate without court approval beyond the period during which the business is continued."

It is also interesting to note that the language of §10509-9 GC, which was in full force and effect at the time when said Administrator incurred all of the expenses claimed by him in liquidating said business, appears to be even more emphatic in the last sentence thereof which reads as follows:

"* * * The executor or administrator shall not have authority to bind the estate without court approval beyond the period during which the business is continued."

Counsel for said Administrator contends that there is a

definite distinction between "liquidating decedent's business" and "continuing decedent's business for a limited period in order to obtain the greatest amount in liquidating the business."

The facts of record in this proceeding fail to disclose any distinction which would exempt said Administrator from the necessity of complying with the express provisions of §10509-9 GC, after one month next following the date of his appointment on January 20, 1953. It is clear that decedent's business was that of buying and selling junk; that the selling of junk was necessary and required to liquidate the decedent's business; that several thousand dollars were paid out as expenses claimed to have been incurred for labor, materials, supplies, payroll deductions, insurance premiums, licenses and other items; all of which the Administrator claims were necessary and incident to the liquidating operations, and which were continuous from January 20, 1953 to and including June 27, 1953.

It therefore appears that, to the extent that said business was so continued beyond one month next following the date of said Administrator's appointment, said Administrator continued the business of said decedent without authorization by the Probate Court of Fayette County and in the absence of any application, notice, hearing or order of the court as required by the express provisions of §10509-9 GC.

The Administrator sought to introduce testimony by the Judge of the Probate Court to show that oral conferences had been had with said judge at which certain authority or consent was obtained to so continue said business. The Exceptor objected to such testimony and said objections were sustained upon the ground that the Probate Court is a court of record and as such must speak through documents and orders of record; that the docket of said court fails to disclose any record of such application, notice, hearing and order as required by §10509-9 GC; and that no such oral conferences or letter agreements between the parties could modify or abrogate the express provisions of the statute.

Therefore, since it is undisputed that all of said eighteen (18) payments were made to Harry Warfield at times which were more than one month next following the date of his appointment as such administrator, and that such employment was deemed necessary to carry on decedent's business in order to liquidate same, it must be concluded that all of said payments were made without authority as required by §10509-9 GC; and that in so far as Item 5 of said exceptions is directed to the Administrator's failure to obtain authority to make such

payments, the fifth exception is well made and should be sustained.

The Sixth Item of said exceptions reads as follows:

"6. The amounts shown in the final account, being marked 'Harry Leeth, cash' do not give a true accounting of the cash received by Harry Leeth in the operation of said business. The said Harry Leeth in addition to drawing the weekly salary as set out in the account did take for himself the sum of $25.00 per week from cash receipts from the time of the administration until July 1st, 1953, all without court order and the same being illegal payments."

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator disbursed and paid to Harry Leeth for labor twenty-four (24) separate payments in the total sum of $1,332.71.

According to Exceptor's Exhibit "A," forty-eight (48) separate payments were made to the said Harry Leeth for labor of which twenty-four (24) appeared to be made by checks in the total sum of $1,332.71 and twenty-four (24) appeared to be made by cash in the total sum of $579.25 for total payments during the accounting period amounting to $1,911.96.

It therefore appears that said twenty-four (24) cash payments to Harry Leeth are not included in the itemized statement of expenditures during the accounting period as required by the provisions of §2109.30 R. C. (formerly §10506-34 GC); and that Item 6 of said exceptions is well made and should be sustained.

The Seventh Item of said exceptions reads as follows:

"7. The said administrator had no authority to grant vacation periods with pay to any of the persons employed by him in selling the junk belonging to the estate."

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator disbursed and made payments to certain persons as follows:

"6/27—James Lemmings—shop labor (vacation period)—54.36
"6/27—Harold Jones    —Shop labor (vacation pd.)    —54.66
"6/27—Harry Leeth     —shop labor (vac. period) —74.45"

Testimony was adduced at the hearing to show that, at the beginning of the accounting period, representations were made to these employees to the effect that they would receive such vacation pay at the conclusion of liquidating said business as an inducement for said persons to remain so employed during the liquidation.

The docket and records of the Probate Court fail to disclose that any such authority was applied for or authorized by said court.

It therefore appears that said expenditures, in the total sum of $183.47 were not authorized; and that Item 7 of said exceptions is well made and should be sustained.

The Eighth Item of said exceptions reads as follows:

"8. In spite of the fact that the administrator contracted with the exceptor to handle the estate without fee, he drew from the estate as administrator's fee the sum of $1,063.33, the correct fee as set by statute of this court being $507.00, all of which he contracted not to receive, and instead not only drawing for himself the sum of $507.00, but an additional sum of $556.33."

As hereinbefore set forth in its discussion of Item 4 of said exceptions, this Court is without jurisdiction to apply the principle of equitable estoppel with respect to the alleged contract whereby the Administrator may have agreed to serve without receiving the fees prescribed by statute; and the Court must therefore direct its attention to the fees claimed and drawn by said Administrator as shown in his account filed herein.

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator drew and disbursed to himself, as and for such administrator's fees, the amounts itemized on his account as follows:

"8/20—Harry Warfield—advance on Adminstrators
estate fee      —400.00
"11/3—Harry Warfield—Bal. Administrators fee      —663.33"
and the total sum drawn as such fees amounted to $1,063.33.

**Sec. 2113.35 R. C.** (formerly §10509-192 GC), specifically prescribes the method of computing said Administrator's commissions as follows:

"Executors and administrators shall be allowed commissions upon the amount of all the personal estate, including the income therefrom, received and accounted for by them and upon the proceeds of real estate sold under authority contained in a will, which must be received in full compensation for all their ordinary services, as follows:

"(A) For the first one thousand dollars at the rate of six per cent;

"(B) All above one thousand and not exceeding five thousand dollars at the rate of four per cent;

"(C) All above five thousand dollars at the rate of two per cent.

"The basis of valuation for the allowance of such commissions on property sold shall be the gross proceeds of sale, and for property distributed in kind the valuation thereof as fixed by the inventory and appraisement.

"Should the probate court find, after hearing, that an executor or administrator has in any respect not faithfully discharged his duties as such executor or administrator, the court may deny such executor or administrator any compensation whatsoever or may allow such executor or administrator such reduced compensation as the court thinks proper."

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator stated and itemized thereon $31,367.25 as the amount of all the personal estate received by him.

According to the aforesaid statutory provisions, he would have been entitled to receive in full compensation for ordinary services the following amounts:

| | |
|---|---|
| 6% of $1,000.00 | $ 60.00 |
| 4% of $5,000.00 | 160.00 |
| 2% of $26,367.25 | 527.35 |

which amounted to a total of $747.35. Upon subtracting said $747.35 from the $1,063.33, which his account shows he paid to himself as administrator's fees, we find that said commissions so paid to the Administrator exceeded by $315.98 the amount authorized by law.

The docket and records of the Probate Court fail to disclose that such excess was applied for and/or authorized by said court at the time said payments were made.

Therefore, it appears that, to the extent of such excess payment, Item 8 of said exceptions is well made and should be sustained.

The Ninth Item of said exceptions reads as follows:

"9. The attorney for the administrator was entitled to a fee based upon court rule of $1388.33, but instead he received the sum of $2243.33, being in excess of the authorized fee in the amount of $855.00, the same received without legal authority."

According to said administrator's account, as filed with the Probate Court of Fayette County, said Administrator disbursed and paid to said attorney, during the accounting period, the following amounts:

| | |
|---|---|
| "3/20—Reed M. Winegardner—on estate attorney fees | — 750.00 |
| "11/3—Reed M. Winegardner—Bal. Est. Attorney Fees | —1493.33" |

which amounted to a total of $2,243.33.

According to Exceptor's Exhibit "G," a schedule of minimum fees adopted by the Fayette County Bar Association on July 1, 1950, which was admitted into evidence by agreement of the parties, the minimum fee to which said attorney would have been entitled thereunder could be computed as follows:

Personal property:
    6% on first $5,000.00 _____$300.00
    4% on next $5,000.00 _____ 200.00
    2% on balance of $21,367.25 _____ 427.35
Real Estate Transferred,
    Appraised at $15,800.00:
    2% on first $10,000.00 _____ 200.00
    1% on remaining $5,800.00 _____ 58.00
which would amount to a total minimum fee of $1,185.35.

During the hearing, said attorney testified that the charges to said estate for his services were based upon a maximum amount of initial fees in the sum of $1,243.35 to which he added a flat fee for expenses and services in the sum of $1,000.00.

At the hearing, said Administrator also testified to the effect that he was satisfied with the attorney fees so charged.

Sec. 2113.36 R. C. (formerly §10509-193 G. C.), provides as follows:

"Allowances, in addition to those provided by §2113.35 R. C. for an executor or administrator, which the probate court considers just and reasonable shall be made for actual and necessary expenses and for extraordinary services not required of an executor or administrator in the common course of his duty. When an attorney has been employed in the administration of the estate, reasonable attorney fees paid by the executor or administrator shall be allowed as a part of the expenses of administration. The court may at any time during administration fix the amount of such fees and, on application of the executor or administrator or the attorney, shall fix the amount thereof. When provision is made by the will of the deceased for compensation to an executor, the amount provided shall be a full satisfaction for his services, in lieu of such commission or his share thereof, unless by an instrument filed in the court within four months after his appointment he renounces all claim to the compensation given by the will."

The docket and records of the Probate Court fail to disclose that such attorney fees were applied for and/or authorized by said court at the time said payments were made.

In the case of **Trumpler, Admr. v. Royer, 95 Oh St 194,** the Supreme Court of Ohio held:

"1. By the provisions of **Section 8, Article IV, Constitution,** and §10492 GC, plenary jurisdiction is conferred on the probate court to grant and revoke letters testamentary and of administration, to direct and control the conduct, and settle the accounts of executors and administrators, and order distribution of estates.

"2. The allowance of fees for services rendered by attorneys employed by an executor or administrator in the settlement of the estate in his hands is a matter to be determined by the probate court, and until so determined such fees do not constitute a valid claim against the estate.

"3. The amount of such fees may be included as an item in the settlement-account of the executor or administrator; or an application upon due and legal notice to all parties in interest may be made to the probate court to allow the claim and fix the amount thereof."

and, in the case of **In Re Estate of Wellmeir, 26 Abs 386** (1938, Probate Court of Montgomery County) it was held:

"1. A claim for counsel fees is a personal claim against the administrator and not against the estate.

"2. The personal liability of the administrator for counsel fees can be removed only to the extent that the administrator shifts the responsibility to the estate by voluntarily requesting that he be allowed to take credit in his account and that he be reimbursed under the order of the Probate Court for reasonable compensation.

"3. Under §10509-193 GC it is incumbent upon the administrator to present the matter of counsel fees to the Probate Court and to request that he be given 'further allowance' to reimburse 'reasonable attorney fees paid by' him; the court may still make the allowance in advance of payment and in anticipation of the filing of an account."

At the hearing on said exceptions, certain testimony was adduced on behalf of said Administrator to the effect that a large number of conferences were had with said attorney during the accounting period concerning problems involving the estate; that said services also involved negotiation and settlement of personal property tax claims against said estate which were compromised for $112.88; that, during the accounting period, said attorney devoted an estimated 300 hours of service to said problems of administering the estate; and that certain opinion evidence by other attorneys was given to support the reasonableness of the attorney fees so paid.

While the fixing of attorney fees is not an exact science, however, the schedule of minimum fees, as adopted by the Fayette County Bar Association, although not conclusive, may be considered conclusive of the reasonableness of the minimum amount attorney fees allowable in the instant proceeding; and it is noted that the initial fees so testified to by said attorney, in the sum of $1,243.35, closely approaches the total which would result from computations made upon that basis; and that, by the adoption of said schedule, the attorneys of this

county presumed to fix a reasonable minimum for the computation of such fees. Therefore, it is the additional flat fee of $1,000.00, covering vague additional expenses and services of said attorney, which is difficult to reconcile with the facts of record. It also appears that the estimated 300 hours of attorney services consumed are not supported by the evidence adduced; for, computed on the basis of a ten hour day, it would represent that the equivalent of thirty (30) full days of service had been devoted exclusively to the problems of administering said estate, and convincing evidence of such service does not appear in the record.

Therefore, upon consideration of all of the evidence adduced in support of the attorney's services so rendered to said Administrator, it would appear that the fee so paid was excessive and unreasonable; and that Item 9 of said exceptions is well made and should be sustained.

The Tenth Item of said exceptions reads as follows:

"10. The item of scrap sale to Helen Warfield in the amount of $2770.00 is not correct."

During the hearing on said exceptions, on February 5, 1954, the attorney for the Administrator admitted in open court and on the record that the amount of $2770.00 was not correct and represented that the correct amount was $2,850.00; and further represented that the distributive difference between said amounts was subject to adjustment between the heirs and was equalized by a certain excess share of rentals collected and received by Mrs. Goldie Brown.

Therefore, it appears that said Item 10 of said exceptions is well taken and should be sustained.

In the light of all of the evidence adduced and for the reasons hereinabove stated, the Court finds that exceptions 1, 3, 5, 6, 7, 8, 9 and 10 should be sustained; and that exceptions 2 and 4 should be overruled; and that the respective exceptions of said administrator and said exceptor should be saved and noted on behalf of each party to the aforesaid findings.

From all of the evidence adduced of record in this proceeding, it appears that the Administrator's Account, herein filed on November 13, 1953, should have included an itemized statement of all receipts.

### RECEIPTS

January 20, 1953 to June 29, 1953 _____$39,142.39

From all of the evidence adduced of record in this proceeding, it appears that the Administrator's Account, herein filed on November 13, 1953, should have included an itemized statement of all expenditures.

### EXPENDITURES

TOTAL CREDITS (Excluding Admr's & Atty's Fees) $29,453.92

Although there appear to be very substantial differences in the total amounts, between the Receipts and Expenditures as itemized on the Administrators First and Final Account, herein submitted on November 13, 1953, and the Receipts and Expenditures hereinabove set forth and itemized from the evidence by the Court, it is possible that certain of these differences may be reconciled and eliminated upon further investigation and resubmission of an amended and supplemental final account by said Administrator.

From all of the evidence adduced, however, it clearly appears that the administrator has not faithfully discharged his duties in the following respects:

1. Said Administrator failed to obtain an order of the Court, as required by law, to continue decedent's business beyond one month after the date of his appointment;

2. Said Administrator failed to obtain an order of the Court authorizing compensation to himself as an employee while continuing decedent's business for which he has already received $1,342.62 as net wages and car expense money;

3. Said Administrator failed to file an account within nine months after his appointment as required by §2109.30 R. C. (formerly §10506-34 GC);

4. Said Administrator failed to include in the aforesaid First and Final Account an itemized statement of all receipts during the accounting period; and

5. Said Administrator failed to include in the aforesaid First and Final Account an itemized statement of all expenditures made during the accounting period;
and the Court so finds.

In the light of all the evidence and findings specifically set forth above, the Court further finds that the amounts, of said Administrator's commissions, if any, and the fees to which his attorney may be reasonably entitled, should be held in abeyance pending submission of an amended and supplemental final account by said Administrator.

The Court further finds that such amended and supplemental final account should be submitted herein by on or before March 20, 1954; and that Counsel for Exceptor may prepare an entry accordingly which will include therein appropriate notation of exceptions on the part of said Administrator and said Exceptor to the aforesaid findings, decision and such entry, and thereupon submit same to Counsel for Administrator and to this Court for approval.